IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:23-cv-02402-SKC-TPO

KIMBERLY CARLSON, and
PATRICK STANSBERRY,

     Plaintiffs,

v.

COBANK,

     Defendant.

---

**ORDER RE: MOTION FOR SUMMARY JUDGMENT (DKT. 42)**

---

This case arises from Defendant CoBank's decision to terminate Plaintiffs Kimberly Carlson's and Patrick Stansberry's employment. Dkt. 1. Plaintiffs assert claims pursuant to Title VII of the Civil Rights Act of 1964 and the Colorado Anti-Discrimination Act and contend CoBank discriminated against them based on their religious beliefs. *Id*. They seek to recover "back pay plus bonuses, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages." *Id*. The Court has jurisdiction under 28 U.S.C. § 1331 because this matter arises under Federal law, and it has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

1

Before the Court is CoBank's Motion for Summary Judgment. Dkt. 42. The Motion is fully briefed. Dkts. 44 (Response), 48 (Reply). The Court has carefully considered the Motion and related briefing, the exhibit attachments, the entire case file, and the applicable law and legal authorities. No hearing is necessary. Because, when considering the undisputed material facts, no reasonable jury could conclude CoBank discriminated against Plaintiffs, CoBank's Motion is GRANTED.

## SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to assess whether a trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the "responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, then the nonmoving party must identify material facts showing there is a genuine dispute for trial. *Id.* at 324. A fact is "material" if it has the potential to affect the outcome of a dispute under applicable law. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995). An issue is "genuine" if a rational trier of fact could find for the nonmoving party on the evidence presented. *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). In performing

2

this analysis, the factual record and any reasonable inferences from it are construed in the light most favorable to the nonmoving party. *Id.*

Even when a party fails to appropriately respond to the request for summary judgment and its purportedly undisputed facts, the Court is nevertheless obligated to ensure the movant has satisfied the standard under Rule 56. As the Tenth Circuit explained in *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1255 (10th Cir. 2017), "in granting summary judgment based upon a failure to respond, a district court must still determine that summary judgment is appropriate." *See also* Fed. R. Civ. P. 56(e)(3) advisory committee's notes to 2010 amendment.

## UNDISPUTED MATERIAL FACTS

Under Fed. R. Civ. P. 56(c), when parties assert that a fact is genuinely disputed, they must support the assertion with citations to specific parts of the record. When they fail to, the Court may consider the fact undisputed for purposes of deciding the motion. Fed. R. Civ. P. 56(e)(2). Additionally, in reference to motions for summary judgment, this Court's Standing Order for Civil Cases directs that general references to record materials are insufficient where the cited document exceeds one page. *See* SKC STANDING ORDER CIV. § C.4.4. When the document contains multiple pages, the Court requires the parties to make specific references to the evidence. *Id*. As the Standing Order says, a "specific reference" means reference to page numbers, line numbers, paragraph numbers, or any combination of these to assist the Court in locating the pertinent materials. *Id*. Because Plaintiffs did not follow Rule 56(e)(2) or

3

the Standing Order, CoBank contends, and the Court agrees, that Plaintiffs' response fails to create any genuine dispute of material fact.[1] Dkt. 48, p.2.

"Judges are not like pigs, hunting for truffles buried in briefs." *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) (citation and quotations omitted). The Court has no obligation to scour the record in search of evidence to support a party's factual assertions. And where Plaintiffs have directed the Court to broad-swath record citations, the Court has ignored them because they equate to no citation at all. *See id.* ("Without a specific reference, [courts] will not search the record in an effort to determine whether there exists dormant evidence. . . .") (cleaned up); *see also Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [the plaintiff's] arguments for him."). Because Plaintiffs have not made adequate record citations in opposing

---

[1] For example, in response to CoBank's Statement of Undisputed Material Facts, Plaintiffs make unsupported arguments or only general references to the evidence. *See* Dkt. 49. Plaintiffs neither cite to any page or paragraph numbers, nor do they specifically quote any portion of the record that would guide the Court on how these documents create disputed issues of fact. They instead make broad assertions regarding the purported disputes and cite whole exhibits—like citing, "Exhibits A-D"—without providing specific references. *See, e.g.*, Dkt. 49, ¶20. And in their Response Brief, Plaintiffs fail to reference any portion of the Statement of Undisputed Material Facts and reference only their own exhibits, to include citation to an "Exhibit G" which is not found in the record. This roughshod approach leaves it to the Court and CoBank to speculate on what portion of Plaintiffs' multiple exhibits could possibly support their arguments. That is not the Court's function. In addition, Plaintiffs frequently engage in strawman arguments wherein they purportedly dispute CoBank's fact, but do not directly address the factual contention and instead inject tangential issues into the response. *See, e.g.*, Dkt. 49, ¶¶12, 20, 27.

4

CoBank's assertions of fact, the Court accepts the following facts, which CoBank appropriately supported by competent evidence and specific record citations, as undisputed:

In January 2020, Plaintiffs were employed by CoBank as Senior Project Managers in the enterprise project management office. Dkt. 49, ¶1. Prior to the COVID-19 pandemic, which began early in 2020, Plaintiffs regularly worked at CoBank's Denver office. *Id.* at ¶2. When the pandemic started, however, CoBank allowed many of its employees, including Plaintiffs, to work remotely. *Id.* at ¶3.

Following the release of COVID-19 vaccinations in 2021, CoBank required its employees to be vaccinated as part of its return-to-office initiative. *Id.* at ¶4. CoBank provided exemptions for employees who could not be vaccinated due to disability or sincerely held religious beliefs. *Id.* at ¶5. For those exempt employees, CoBank created protocols for working in the office including wearing a mask, social distancing, and periodic testing ("safety protocols"). *Id.* at ¶8. And to create more workplace flexibility, CoBank recategorized its employees based on those who were (1) required to work in the office full-time; (2) given a set schedule for a combination of remote and in-office work; (3) permitted to work primarily from home with periodic in-office requirements; and (4) allowed fully remote work. *Id.* at ¶9.

Plaintiffs were classified under the third category, and their manager determined they were required to attend a monthly meeting in person but could

5

otherwise work remotely. *Id.* at ¶¶11-12. No employees in Plaintiffs' work group were permitted full remote work. *Id.* at ¶13.

After CoBank notified its staff that employees would be required to return to work consistent with their job classifications, Plaintiffs submitted letters from their attorney and requests for exemption from the vaccination requirement. *Id.* at ¶¶15-16, 18-19. They based their requests on their religious opposition to the COVID-19 vaccine and their contention that the vaccine was created with the use of aborted fetal tissues. *Id.* at ¶¶18-19. In their letters and requests, Plaintiffs did not specify any religious opposition to the safety protocols.[2] *Id.* at ¶19. CoBank granted Plaintiffs a religious accommodation to the vaccine requirement but informed them they would be required to comply with the safety protocols for in-person work. *Id.* at ¶20. Even so, Plaintiffs' attorney told CoBank he would tell his clients they could continue to work from home. *Id.* at ¶21.

---

[2] In their response, Plaintiffs contend this fact is disputed because their attorney "clearly state[d] objections to the mandates/protocols of vaccine, mask, testing and temperature checks." Dkt. 49, ¶19. But this argument does not directly address CoBank's position that Plaintiffs never identified a *religious* objection to the safety protocols. While they may have objected to the masking, social distancing, and testing requirements, Plaintiffs never specified any opposition based on their religious beliefs. Moreover, Plaintiffs support their position with only general citations to Exhibits C and D. But these exhibits contain multiple letters and Plaintiffs do not direct the Court to any specific letter or its content. The Court nevertheless reviewed these exhibits and agrees with CoBank that Plaintiffs' only expressed religious objection was to the vaccine. That religious objection has no relationship to the safety protocols. The only reason Plaintiffs gave for opposing the safety protocols was their belief they had been successful at their jobs while working remotely.

6

On December 24, 2021, CoBank informed Plaintiffs' attorney it would not be offering full-time telework as an accommodation for employees who sought vaccine exemptions and that those employees would need to report to work when required. *Id*. at ¶23. CoBank was specific that Plaintiffs were expected report to the office when required and comply with the safety protocols, and if they did not, Plaintiffs could be subject to disciplinary action. *Id*. at ¶24. After Plaintiff Stansberry (via his attorney) again stated he would continue to "utilize his accommodation and work from home," CoBank explained that the vaccine accommodation did not include full-time telework and Plaintiff Stansberry was required to report to the office. *Id*. at ¶¶25-26. CoBank also noted there was no indication Plaintiff Stansberry's desire to work from home was related to his religious beliefs. *Id*. at ¶27. Plaintiffs' attorney did not respond to this letter. *Id*. at ¶28.

In February 2022, Plaintiffs' Manager, John Ley, directed Plaintiff Stansberry to report to the office for an in-person meeting. *Id*. at ¶29. Plaintiff refused to attend in person based on his apparent belief that his vaccine accommodation included full-time telework. *Id*. at ¶¶30-31. Both Plaintiffs attended the February meeting remotely. *Id*. at ¶¶32. Thereafter, CoBank informed Plaintiffs' attorney that notwithstanding their vaccine exemption, Plaintiffs were required to report to work in person as required by their manager. *Id*. at ¶33. CoBank further informed Plaintiffs' attorney that the next on-site meeting was scheduled for March 24, 2022,

7

and if Plaintiffs did not attend, CoBank would terminate their employment. *Id*. at ¶35.

Despite this warning, Plaintiffs did not attend the March meeting in person. *Id*. at ¶36. Accordingly, CoBank terminated their employment because of their failure to comply with the directive that they report to work consistent with their job classification and their manager's requirements. *Id*. at ¶37.

This lawsuit followed. Dkt. 1.

## ANALYSIS AND FINDINGS

Plaintiffs' claims against CoBank are based on their contention that CoBank failed to accommodate their religious beliefs by refusing to permit them full-time remote work. They also contend CoBank retaliated against them for making this request by giving Plaintiff Stansberry negative performance reviews, refusing to transfer Plaintiff Carlson to another department where she could work remotely, and ultimately terminating their employment. They bring their claims under Title VII, 42 U.S.C. §§ 2000e, *et seq.*, and the Colorado Anti-Discrimination Act, Colo. Rev. Stat. §§ 24-34-402, *et seq.*, which are evaluated under the same standards. *See Agassounon v. Jeppesen Sanderson, Inc.*, 688 F. App'x 507, 509 (10th Cir. 2017) (analyzing CADA discrimination and retaliation claims under the same legal standards as Title VII).

In its Motion, CoBank contends that based on the undisputed evidence, no jury could conclude it failed to accommodate Plaintiffs' religious beliefs or that it retaliated against them for seeking religious accommodations. The Court agrees.

8

### A.     Failure to Accommodate

Under Title VII, it is unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An employer must "reasonably accommodate" an employee's religious practice unless such accommodation would impose an "undue hardship on the conduct of the employer's business." *Id.* § 2000e(j). To establish a prima facie case of failure to accommodate, the plaintiff must show "(1) the employee has a bona fide religious belief that conflicts with a job requirement, (2) the employee informed the employer of this conflict; and (3) the employer fired the employee for failing to comply with the job requirement." *Tabura v. Kellogg USA*, 880 F.3d 544, 549 (10th Cir. 2018).

Plaintiffs contend they told CoBank of their religious opposition to both the vaccine requirement and the safety protocols. According to their allegations, CoBank initially granted them an accommodation of full-time telework but then arbitrarily revoked the accommodation and required them to report to the office once a month and abide by the safety protocols. Dkt. 1, ¶¶13-15, 30-32, 29-30 (count one), 39-40 (count one).[3] They contend, therefore, that CoBank engaged in religious

---

[3] Count One of the Complaint does not continue numerically from the previous background section, which ends at paragraph 44, and instead starts at paragraph 27. To the extent citation is necessary, the Court cites the allegations consistent with the numbering used in the Complaint.

discrimination in violation of Title VII. *Id*. But the undisputed material facts tell a different story.

### 1. Safety Protocols

First, with respect to the safety protocols, CoBank argues there is no genuine dispute regarding whether Plaintiffs ever told CoBank they were religiously opposed to masking, social distancing, or testing, such that they required an accommodation for their religious beliefs. Dkt. 42, pp.7-9. In response, Plaintiffs fail to directly address any of the undisputed facts CoBank cites in support of its position. Plaintiffs instead simply argue they did in fact inform CoBank and then cite multiple, and sometimes all, exhibits in their entirety. This is insufficient to create disputed issues of fact and is reason enough to grant the Motion.

Nevertheless, the Court reviewed these materials and has made some observations. In Plaintiffs' individual declarations, they each state that after learning about the vaccine requirement and safety protocols, they "knew that complying with any of them would be against [their] sincerely held religious beliefs." Dkt. 44-1, ¶10; Dkt. 44-2, ¶12. According to Plaintiff Stansberry, he "began communicating [his] objections directly to CoBank beginning with a letter directly to CoBank's CEO, Tom Halverson." Dkt. 44-1, ¶10. Plaintiff Carlson attests she communicated her objections through counsel. Dkt. 44-2, ¶12. They each further declare that after completing the religious accommodation request forms for the vaccines, CoBank granted their requests and allowed them to work from home full time. Dkt. 44-1, ¶11; Dkt. 44-2,

10

¶13. Plaintiffs' declarations, however, do not create a disputed issue of fact on this matter.

"It is well-settled that a district court's assessments of the admissibility and probative value of affidavits at the summary-judgment phase involve, at bottom, evidentiary determinations." *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015). Consequently, their admissibility is committed to this Court's sound discretion. *Id*. To that end, "[a]ffidavits must contain certain indicia of reliability." *Id*. "Unsubstantiated allegations carry no probative weight in summary judgment proceedings; they must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (cleaned up).

Concerning Plaintiff Stansberry, it is not clear from his declaration whether he is referring to the letters his attorney sent CoBank or to a letter that he wrote himself. Having reviewed the correspondence in the record, the Court was unable to find any letter directly from Plaintiff Stansberry to CoBank's CEO. The only communications in the record written by Plaintiffs are their letters dated September 11, 2021, to Deb Bose (Dkts. 43-10, 43-11) and their individual exemption requests (Dkts. 43-12, 43-13). But these communications only discuss Plaintiffs' religious opposition to receiving the vaccine. *Id*. There is no mention of the safety protocols in any of these documents. *Id*.

Similarly, the communications from Plaintiffs' attorney to CoBank only discuss Plaintiffs' religious opposition to the vaccines. *See* Dkt. 44-3, pp.2-4; Dkt. 44-4, pp.4-6. Counsel's letter on behalf of Plaintiff Carlson does not mention the safety protocols at all (Dkt. 44-4, pp.4-6), and in the letter regarding Plaintiff Stansberry, his stated objection to masking, social distancing, and testing is based on his belief that he had "been able to satisfy his full-time job duties" via telework (Dkt. 44-3, pp. 4).

Because Plaintiffs' declarations—that they told CoBank about religious objections to the safety protocols—are unsupported, if not contradicted, by the record evidence, the Court concludes they have no probative value on this issue. Therefore, the Court finds the undisputed material facts show that Plaintiffs never informed CoBank of a religious objection to the safety protocols. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) ("self-serving statements in affidavits *without factual support in the record* carry no weight on summary judgment") (emphasis in original). Consequently, CoBank is entitled to judgment in its favor on Plaintiffs' claim that it failed to accommodate their religious opposition to the safety protocols.

## 2. Vaccine Requirement

Turning to Plaintiffs' religious objection to the COVID-19 vaccine requirement, Plaintiffs admit their requests for an exemption from the vaccine requirement were granted in November 2021. Dkt. 44, p.5; *see also* Dkt. 49, ¶20. They contend, however, that the original accommodation to their vaccine objection was full-time remote work, which CoBank arbitrarily revoked without engaging in the interactive process. These contentions are unavailing.

There is no evidence supporting that CoBank ever offered full remote work as an accommodation for employees opposed to vaccination. Rather, the undisputed facts show CoBank initially allowed employees to work remotely as a response to the spreading COVID-19 pandemic. Dkt. 49, ¶3. It is further undisputed that CoBank's accommodation for those with disabilities or religious opposition to the vaccine was to mask, social distance, and complete periodic testing, when required to come to work. *Id.* at ¶5. Indeed, Plaintiffs were aware their vaccine accommodation did not include full-time telework because CoBank's attorney specifically informed their counsel of this. Dkts. 43-16, pp.2-3; 43-18, p.2; 43-20, p.2. And Plaintiffs were permitted to continue working from home—after their accommodation requests were granted—only because CoBank deferred its return to office plans several times. *Id.* at ¶22; *see also* Dkt. 43-4, ¶8.

Importantly, while Title VII requires employers to make reasonable accommodations for their employees' sincerely held religious beliefs, "[i]t does not

13

require employers to accommodate the religious practices of an employee in exactly the way the employee would like to be accommodated. Nor does Title VII require employers to accommodate an employee's religious practices in a way that spares the employee any cost whatsoever." *Pinsker v. Joint Dist. No. 28J of Adams & Arapahoe Ctys.*, 735 F.2d 388, 390–91 (10th Cir. 1984); *see also Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986) ("We find no basis in either the statute or its legislative history for requiring an employer to choose any particular reasonable accommodation."). And where an employer has offered a reasonable accommodation, "the employer need not further show that each of the employee's alternative accommodations would result in undue hardship." *Id*.

Other than Plaintiffs' argument they could perform their jobs successfully from home, they've offered no evidence that CoBank's safety protocols were an unreasonable accommodation to their religious objections to the vaccine. The undisputed evidence shows that following Plaintiffs' request for a religious exemption, CoBank agreed they would not have to receive the COVID-19 vaccine and could instead wear masks, social distance, and periodically test for COVID-19. This accommodation eliminated any religious conflict for the Plaintiffs regarding the vaccine, and therefore, it was reasonable. *Cf. Breshears v. Oregon Dep't of Transportation*, No. 2:22-cv-01015-SB, 2023 WL 136550, at *3 (D. Or. Jan. 9, 2023) (rejecting mask requirement as a basis for a Title VII claim); *Leake v. Raytheon Techs. Corp.*, No. CV-22-00436-TUC-RM, 2023 WL 2242857, at *5 (D. Ariz. Feb. 27, 2023)

14

(same for safety conditions for vaccination-exempt employees); *Schmidt v. City of Pasadena*, No. LA CV21-08769 JAK (JCx), 2023 WL 4291440, at *8 (C.D. Cal. Mar. 8, 2023) (same for testing requirements). *See also Telfair v. Fed. Exp. Corp.*, 934 F. Supp. 2d 1368, 1384 (S.D. Fla. 2013), *aff'd*, 567 F. App'x 681 (11th Cir. 2014) ("An accommodation is reasonable as a matter of law, if it in fact eliminates a religious conflict in the workplace[.]").

CoBank is entitled to judgment in its favor on this claim.

**B.      Religious Discrimination – Retaliation**

Regarding their claim for retaliation, Plaintiffs contend that although CoBank granted their request for a religious accommodation from vaccination, "when Plaintiffs continued to raise their concerns and objections to the additional Mandates, Defendants began to engage in its pattern of discrimination and retaliation aimed directly at Plaintiffs." Dkt. 44, pp.8-9. According to Plaintiffs, this retaliation consisted of requiring them to report to the office once per month and comply with the safety protocols, giving Plaintiff Stansberry poor performance reviews, preventing Plaintiff Carlson from transferring departments, and ultimately terminating their employment.

To state a prima facie case for retaliation under Title VII, a "plaintiff must make a showing that (i) he was engaged in protected activity, (ii) he suffered an adverse employment action, and (iii) there was a causal connection between the protected activity and the adverse action." *Mathews v. Denver Newspaper Agency*

15

*LLP*, 649 F.3d 1199, 1210 (10th Cir. 2011). In the Tenth Circuit, "an adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017) (internal quotation marks omitted).

In its Motion, CoBank addresses only the vaccine accommodation requests and argues it did not retaliate against Plaintiffs because of those requests. Dkt. 42, pp.13-21. But, based on the Court's review of the Complaint (Dkt. 1) and Plaintiffs' response to the Motion (Dkts. 44, 49), it is clear the protected conduct at issue is not Plaintiffs' request for a vaccine accommodation;[4] rather, the protected conduct alleged is Plaintiffs' purported request for a religious accommodation from the safety protocols.

In their Response, Plaintiffs frame the issue in this case as being forced "to choose between their sincerely held religious beliefs and keeping their job." *See, e.g.*, Dkt. 44, pp.10-11. But such a choice could not apply to the vaccination requirement because, in accommodation of Plaintiffs' religious beliefs, CoBank did not require Plaintiffs to get the vaccine. Thus, the only conflict in this case is Plaintiffs' refusal to return to the office once a month, and when returning, comply with CoBank's safety protocols. To be sure, Plaintiffs confess as much in their response where they state

---

[4] While Plaintiffs were opposed to both the vaccination requirement and the safety protocols, only their opposition to vaccination was based on religion. But throughout the Complaint and Response, Plaintiffs attempt to bootstrap their objections to the safety protocols to their religious accommodation request regarding vaccination by simply referring to them *en masse* as "Defendant's COVID-19 Mandates."

16

that the "vaccination mandate . . . is not at issue in this case," and only "the [Return to Office] Mandates are at issue in this case." *See* Dkt. 49, ¶¶55, 56, 59, 60, 61, 63, 64.

However, this Court has already found Plaintiffs did not express any religious opposition to either the safety protocols or the requirement to work in person once a month. *See* Section A.1., *supra*. Therefore, no reasonable jury could conclude Plaintiffs engaged in protected activity in this regard, and any retaliation claim based thereon necessarily fails.

## C.     Colorado Anti-Discrimination Act

In their third claim under the Colorado Anti-Discrimination Act, Colo. Rev. Stat. §§ 24-34-402 *et. seq.*, Plaintiffs contend CoBank violated the statute when it failed to offer them reasonable accommodations and terminated them based on their religious objections to the COVID-19 vaccination requirements and safety protocols. Dkt. 1, ¶¶63-74. These, however, are the same contentions made in Plaintiffs' Title VII claims. Because these statutes are analyzed under the same legal standards, *Agassounon*, 688 F. App'x at 509, the Court concludes CoBank is entitled to judgment on Plaintiffs' state law claims.

*     *     *

For the reasons shared above, IT IS ORDERED:

1. Defendant CoBank's Motion for Summary Judgment (Dkt. 42) is GRANTED and the claims against it are dismissed;

2. The Clerk of Court shall enter judgment in favor of CoBank, which is entitled to an award of its costs.

DATED: November 7, 2025

BY THE COURT:

S. Kato Crews
United States District Judge